# Venter Consulting Service

Box 2542
Grand Island, NE  68802-2542
308 381-6553
Fax 308 381-6553
*venterconsulting@alltel.net*

October 21, 2008

Mr. Derek Aldridge
Attorney at Law
233 South 13th Street, Suite 1400
Lincoln, NE  68508

Re:  David Schauer

## INITIAL VOCATIONAL EVALUATION

Introduction:  An initial vocational evaluation was conducted with Mr. David Schauer at his home in Lincoln, Nebraska on August 29, 2008 at the request of his attorney, Mr. Derek Aldridge.  The evaluation was undertaken to determine his residual employability regarding his physical impairments prior to and subsequent to a left elbow injury he obtained while working as a machinist for the Burlington Northern Santa Fe (BNSF) railroad as those impairments relate to the Americans with Disabilities Act.

The nature and purpose of my intervention in this case was explained to Mr. Schauer.  He understood the explanation and cooperated fully throughout the interview.

Medical Update:  Mr. Schauer states that in October of 2001 he was employed as a machinist at the Havelock Wheel Shop for BNSF.  On October 1, 2001 he strained his left elbow while moving a wheel set, or wheel and axle, adding that he didn't know it was chained.  Later that same day he adds that he further injured the left elbow when, while extracting a wheel set from a lathe, it twisted while coming down the ramp and he attempted to straighten it out.

Schauer adds that he continued to work until mid-December and didn't report the injury as he believed it would get better.  He did ultimately see Dr. Van Vahle, a family physician in Seward, Nebraska who took x-rays, provided medication and prescribed physical therapy.  He was referred to Dr. D.R. Bozarth, an orthopedic surgeon in Lincoln, who treated him conservatively, and placed him on modified duty on January 8, 2002.  His lifting restriction were gradually increased by Dr. Bozarth, who recommended a formal functional capacity evaluation on April 29, 2002.


EXHIBIT 203

Schauer
Page 2

Mr. Schauer did undergo a functional capacity evaluation with Mr. Jake DeNell at Lincoln Orthopedic Physical Therapy on May 14, 2002. That evaluation was determined to be a valid assessment of his physical capabilities, and it concluded that Mr. Schauer should be able to return to his normal job duties as a Journeyman Machinist without restriction.

The functional assessment further found that he could occasionally carry up to 90 pounds with both hands, frequently lift up to 60 pounds and constantly lift up to 30 pounds. These capabilities are consistent with the ability to perform a relatively full range of heavy work. The evaluation further found that he had no restrictions in sitting, standing, walking, and bending, and that he could constantly perform ladder climbing, balancing and crawling. He passed 40/40 validity criteria indicating a valid test result.

Upon receiving the results of the functional capacity assessment, Dr. Bozarth released Mr. Schauer to return to work without restriction. Prior to completing the functional capacity evaluation, Mr. Schauer had injured his back at home in a non-work related incident, for which he also received conservative care from Dr. Paul LeClair at the Madonna Rehabilitation Hospital, where he also received physical therapy. Mr. DeNell noted in his report that neither Schauer's lateral epicondyle or his back limited his functional ability.

Dr. LeClair released Mr. Schauer to return to work with no restrictions on June 11, 2002. As a result, from a medical and a vocational rehabilitation standpoint, Mr. Schauer's physical capabilities were the same on June 11, 2002 as they were when he was hired as a Machinist for BNSF in February of 1999.

This is significant in that Mr. Schauer was born with a congenital defect to his right arm. He has no elbow, and has limited use of the fingers on the right hand. Mr. DeNell noted in the functional capacity evaluation that Schauer's right hand has a congenital anomaly, but added that the hand could be used for simple grasping, and that Schauer has a strong pinch between his first and second digits. In my evaluation of Mr. Schauer, he indicated that he can use his right arm for support, that he has a thumb to five finger grip, and that his right wrist and right shoulder are strong. He estimated that he could carry 20-25 pounds with his right arm alone.

Educational Background: Mr. Schauer, now age 49, was born in Fremont, Nebraska and graduated in 1978 from Scribner (NE) High School. Approximately three years after his graduation, he applied for a machinist position with Sunstrand in York, Nebraska through a job training program sponsored by the Nebraska Department of Economic Development.

Through this program, instructors from Southeast Community College went to the job site in York and provided training in the machining of aviation components. This program lasted about nine weeks, or the equivalent of one quarter. Upon the completion of the training, Schauer received a certificate in Machining from Southeast Community College, and he continued to work as a machinist for Sundstrand for approximately five years.

Vocational History: At the time of his left elbow injury, Mr. Schauer was employed as a Machinist for the BNSF at the Havelock Wheel Shop in Lincoln, Nebraska.

Schauer
Page 3

According to the "Dictionary of Occupational Titles" (DOT), the standard reference guide to occupations published by the U.S. Department of Labor, and typically relied upon by those in the field of vocational rehabilitation, the work of a Machinist (Railroad Equipment) DOT #622.381-014 is rated as heavy work, involving exerting 50 to 100 pounds of force occasionally, 20 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly. These capabilities are consistent with the valid results of Mr. Schauer's functional capacity evaluation of May 14, 2002.

Prior to working for the BNSF as a Journeyman Machinist, Mr. Schauer worked as a Machinist for Sundstrand for about six years, as a CNC Machinist for Appleton Electric for five years, and also worked as a Machinist for Cushman Manufacturing in Lincoln, Parker-Hannifin for 2 ½ years, as well as companies in North Carolina, South Carolina, California and Omaha. As such, prior to beginning his employment for BNSF, Mr. Schauer had worked successfully as a machinist for about 18 years. He also worked for a time as a tool and cutter grinder for Moen in Ohio.

According to the DOT, work as a General Machinist in a machine shop, DOT #600.280-022 or 600.280-042 is rated as Medium work, which would involve exerting up to 50 pounds of force occasionally, up to 25 pounds of force frequently and up to 10 pounds of force constantly. The DOT code as a Machinist (machine shop) 600.280.022 describes a machinist who sets up and operates conventional, special-purpose, and numerical control CNC machines to fabricate parts, and fit and assemble machine parts. The DOT machinist code 600.280-080 describes a maintenance machinist at a shop who sets up and operates a variety of machine tools specifically to replace or repair defective parts. These two DOT codes would be consistent with the duties Mr. Schauer describes in his several jobs as a machinist throughout the years, and would be consistent with how those jobs are performed in the national labor market. Both positions involve the use of similar tools and processes, but one is geared mostly towards machining new parts, and one describes more of a maintenance and repair type position.

The DOT code of Car Repairer (railroad equipment) alternative title Machinist, 622.381-014 describes a worker who repairs and rebuilds railway freight cars. Specifically, the DOT description of this job states that the worker involved in this capacity "removes and inspects locomotive or car units, such as wheels, truck and brake assemblies . . . Using pneumatic hoist and jack, pinch bar, hand tools, etc. . . replaces defective parts and reassembles roller bearings. . . May be known according to specific tasks performed as: Wheel Fitter (railroad equipment.) This description certainly appears to be consistent with Mr. Schauer's description of his duties at the Havelock Wheel Shop.

At the time of his elbow injury, then, Mr. Schauer had shown the ability to perform medium to heavy work as that work is defined in the DOT, for about 20 years, including 2 ½ years at BNSF. When he was released to work following the functional capacity evaluation in June of 2002, that evaluation indicated he remained capable of work at the heavy class of jobs, and was released to work as a Journeyman Machinist with no restrictions.

Schauer
Page 4

Mr. Schauer adds that he grew up on a farm, which include a farrow to finish hog operation as well as row crops. He indicated that he typically did field work, operating heavy equipment, while in high school. In addition, while in high school he took Diversified Occupations, and got a job at Snyder Industries as a machine operator shearing angle iron; operating a band saw and also worked as a welder. Following his graduation from high school, he worked for Valmont Industries for two years in the pipe department, removing burrs with grinders, straightening pipe and welding.

At the time of Schauer's full medical release in June of 2002, he provided that release to BNSF and was furloughed the following day. He was sent a recall notice in May of 2004, but was medically disqualified from working as a Machinist in the Lincoln Diesel Shop, as BNSF indicated that a review from Dr. Michael Jarrard concluded that Mr. Schauer could perform left-handed work only. In addition, BNSF indicated that based on the results of the functional capacity evaluation, Mr. Schauer could not perform the essential function of climbing on the job as a Machinist at the Lincoln Diesel Shop because he could not maintain three point contact while climbing. In fact, the functional capacity evaluation indicated that Schauer could climb ladders, balance and crawl on a constant basis.

Americans with Disability Act Guidelines: As Mr. Schauer's disability, or impairment, relates to the Americans with Disabilities Act (ADA), it is significant that there are three elements to qualify for relief. First, a worker must have a disability within the meaning of the ADA, which is defined as a physical or mental impairment which substantially limits one or more major life activities, of which working is one.

When I was appointed by then Governor Ben Nelson to the Nebraska Commission on the Employment of Individuals with Disabilities, I had the opportunity to attend workshops relating to the recent passage of the Americans with Disabilities Act. At one of those seminars, I was provided and received training with the "Americans with Disabilities Act Handbook" published by the Equal Employment Opportunity Commission and the U.S. Department of Justice. This manual provides interpretive guidance which is helpful in illuminating the specific meanings of a "class of jobs" and a "broad range of jobs" as those terms are used in defining eligibility for relief under the Americans with Disabilities Act.

The ADA Handbook provides an example in which an individual who has a back condition that prevents him from doing heavy labor would be substantially limited in the major life activity of working because his impairment eliminates his ability to perform a class of jobs (heavy jobs).

This is significant in that the "Dictionary of Occupational Titles" provides five classifications of work as it relates to physical exertion, that being sedentary, light, medium, heavy and very heavy. As such, if the inability to perform heavy work eliminates the ability to perform a class of jobs, then it by necessity follows that sedentary, light, medium and very heavy work also would qualify as a class of jobs in and of themselves.

In addition, the ADA Handbook indicates that the individual who could no longer perform heavy work would be considered substantially limited in the life activity of working even if he remained able to perform jobs in another class--e.g. the class of semi-skilled jobs.

Schauer
Page 5

This is also significant in that the DOT, in addition to classifying jobs from sedentary to very heavy, also classifies all jobs as either unskilled, semi-skilled or skilled. As a result, a class of jobs as it relates to the ADA and the DOT would be classifications as they relate to physical exertion, or sedentary to very heavy work, as well as skill level, or unskilled to skilled work.

This is particularly important in the case of Mr. Schauer, as there is some disagreement on the part of the parties as to the significance of his congenital anomaly to his right arm, and to the vocational effects of this difference.

While Mr. Schauer is capable of using his right arm for simple grasping and for support, he does not have fine motor skills with the right hand. According to the "Vocational Expert Handbook" published by the Social Security Administration, Office of Hearings and Appeals, reaching, handling, fingering and feeling require progressively finer usage of the upper extremities to perform work activities. Reaching and handling involve working primarily with the whole hand and are required in almost all jobs.

Fingering involves working with the fingers, and is needed to perform most unskilled sedentary jobs, which require good use of the upper extremities of both hands. In fact, this source indicates that the loss of fine dexterity skills restricts the sedentary and light ranges of work much more than it does the medium, heavy and very heavy ranges of work. The DOT, which again is the standard source defining jobs in the United States utilized by those in the field of vocational rehabilitation, rates work as a machinist as medium to heavy work. As such, based on his congenital birth defect affecting the right upper extremity, Mr. Schauer has an inability to perform a class of jobs, those being the sedentary and light unskilled jobs, as well as a broad range of jobs, which would include all jobs from unskilled through skilled throughout the class of sedentary and light jobs with require bilateral manual dexterity, such as clerical or other keyboarding type positions, but would be able to perform medium to heavy work.

At the time of his elbow and back injuries, Mr. Schauer had 20 years of experience as a machinist. His ability to perform this job is consistent with the DOT classification of machinist jobs as medium to heavy work, as that work would involve gross hand and arm movements, rather than fine motor skills. When he was furloughed in 2002 by BNSF and when he was called back to work in 2004 he had no limitations to his back and left arm, and was, for all practical purposes, in the same physical condition he was in during his 20 years of experience as a machinist.

BNSF, however, disqualified him from employment as a machinist as they mistakenly regarded him to have a disability which limited him to left-handed work only, as well as which precluded climbing, which they further indicated was an essential function of working as a machinist at BNSF.

The ADA Handbook indicates that an individual satisfies the third part of the "regarded as" definition of disability in the employer erroneously believes the individual has a substantial limiting impairment that the individual actually does not have.

Schauer
Page 6

From a vocational rehabilitation standpoint, however, BNSF's views that Mr. Schauer is limited to left handed work only and cannot climb is not consistent with the record. Obviously, Mr. Schauer did perform work as a machinist at the medium and heavy exertional levels for 20 years, including 2 ½ years at BNSF. In the functional capacity evaluation performed by Mr. Jake DeNell at Lincoln Orthopedic Physical Therapy, it was specifically noted that Mr. Schauer has no restrictions with balancing, ladder climbing and crawling, all of which, according to the assessment, can be performed on a constant basis. In addition, that assessment indicated that Schauer can use his right hand for simple grasping, and he has a strong pinch between his first and second digits. Schauer passes 40/40 validity criteria, indicating valid test results.

As such, as BNSF regards Mr. Schauer as capable of performing left hand work only, he would have the total loss of use of an upper extremity (the right arm). Again, according to the "Vocational Expert Handbook" published by the Social Security Administration, a person who has lost the use of an arm or hand obviously cannot perform jobs which require use of both arms and hands. It adds that the loss of major use of an upper extremity is rather definitive in that there is considerable absence of functional ability.

The "Vocational Expert Handbook" adds that "experience with persons who have lost the use of an upper extremity has shown that their potential occupational base in between the level of sedentary and light work . . . These individuals would generally not be able to perform sedentary work because most unskilled sedentary jobs require good use of both hands." As a result, according to U.S. governmental guidelines from the Social Security Administration, an individual who has lost the use of an upper extremity, as alleged by BNSF, would not be able to perform unskilled sedentary work, nor would he be able to perform medium, heavy or very heavy work.

Therefore, if BNSF is correct in regarding Mr. Schauer as capable of performing left hand work only, he would be totally precluded from performing work as a machinist, as that work is medium to heavy in exertional range as defined by the DOT. This, obviously, cannot be true as Mr. Schauer worked successfully as a machinist for 20 years with the ability to perform gross arm and hand movements on the right side at the medium and heavy levels. According to the Nebraska Department of Labor, Office of Workforce Development, there are 1,740 jobs as a machinist in Nebraska, with a constant vacancy rate of 4.7 percent, or constant openings of about 81 jobs.

It is clear that fine motor skills with the right hand were not required in his 20 year history of working as a machinist, because he never had fine motor skills with the right hand and was able to maintain work despite that condition. In addition, BNSF disqualified him from working as a machinist as he could not maintain three point contact, citing the results of the functional capacity evaluation, when, in fact, that assessment indicated that Schauer can continually climb ladders, crawl and balance.

The DOT provides definitions for approximately 12,000 jobs in the national economy. A companion resource, "The Classification of Jobs" by Janet Field and Timothy Field, also a standard resource used in the field of vocational rehabilitation, indicates that of those 12,000 jobs, approximately 13.3 percent, or 1,600 jobs, involve occasional to frequent climbing.

Schauer
Page 7

Again according to the "Vocational Expert Handbook", limitations in climbing and balancing can have varying effects on the occupational base, depending upon the degree of limitation and the type of job. It adds that limitations with climbing and balancing would rule out certain occupations, from light duty work as a painter which requires climbing ladders and scaffolding; and the very heavy job of firefighter. Certainly, many jobs from the light to very heavy classifications require climbing ladders, such as a truck driver climbing into the cab of his truck, farmers, store stockers, construction workers, grain elevator workers, many sales clerks, etc. As a result, BNSF's belief that Mr. Schauer's inability to climb, coupled with his ability to perform work only with his left hand, would preclude both a class of jobs (machinist; medium to heavy work; unskilled sedentary work) as well as a broad range of jobs (all jobs requiring bilateral arm and hand use and all jobs requiring climbing).

The ADA Handbook, in providing interpretive guidance, indicates that the terms "numbers and types of jobs" and "number and types of other jobs" as used in the factors described above are not intended to require an onerous evidentiary showing.

Rather, the terms only require the presentation of evidence of general employment demographics that indicate the approximate number of jobs (e.g. "few", "many", "most") from which an individual could be excluded because of an impairment.

The third element of the ADA is that a worker must suffer an adverse employment action due to a disability or perceived disability. It is obvious that Schauer was denied employment as a machinist at BNSF based on a mistaken perception that he could perform left handed work only, and was not able to climb; restrictions which would preclude not only a class of jobs, but a broad range of jobs.

Mr. Schauer, then, has a physical impairment that substantially limit's the major life activity of working ( the congenital defect which precludes unskilled sedentary and light work); is also mistakenly perceived as having an impairment (the loss of use of an upper extremity which precludes medium to heavy work) and climbing, which precludes a broad range of job at exertional levels from light to very heavy; and, by virtue of the obvious congenital disfigurement to his right arm and hand, has a record of such an impairment.

Conclusions: I would note that the vocational rehabilitation specialist with the BNSF forwarded many job openings in 2005 and 2006 to Mr. Schauer. Most of them were clearly beyond Mr. Schauer's training, experience and skill level, such as jobs as a Manager of Operations, Senior Marketing Analyst, Electronics Technician, Manger of Environmental Operations, Claims Examiner, Telecommunications Maintenance Manager, Chef, Manager of Accounting, Web Publisher, Sales Representative, etc. In my view, appropriate vocational rehabilitation services would, at a minimum, require some sort of screening to insure that only appropriate jobs are forwarded. Other jobs which were forwarded included laboring positions which would require the use of both hands and/or climbing. Jobs were forwarded to Schauer which existed all over the country, and not just in his geographical area. He was not provided with any openings as a machinist, even though a review of the record indicates that 33 machinists were hired at the Havelock Wheel Shop after Mr. Schauer was given a release to work as a Journeyman Machinist with no restrictions.

Schauer
Page 8

Vocationally, there is a significant difference between the ability to use an upper extremity for gross motor tasks and fine motor tasks versus the total loss of use of an upper extremity. BNSF indicates that Mr. Schauer is not capable of working as a machinist at the Havelock Wheel Shop because he cannot perform fine motor tasks with the right hand, and, in fact, cannot use his right arm at all. It is clear, however, that fine motor tasks with the right hand were not required in his 20 years of experience as a machinist, including 2 ½ at BNSF. In addition, BNSF disqualified him from working as a machinist as he could not maintain three point contact while climbing, despite objective evidence on a valid functional capacity evaluation that he can continually climb, balance and crawl.

As a result, BNSF mistakenly regarded Mr. Schauer as having a disability which would preclude him from both a class of jobs (work as a machinist for which he has prior training and experience) as with the total loss of use of an upper extremity he would not be capable of work at the medium and heavy exertional levels; as well as a broad range of jobs, or jobs which would not utilize his prior training and work experience but which would require at least some work with both extremities, such as clerical type work; or work which involves climbing, such as painting, truck driving, stocking, construction work, farming, as well as approximately 1,600 of the 12,000 jobs defined in the "Dictionary of Occupational Titles."

Mr. Schauer, then, has a disability which would preclude him from performing a class of jobs and a broad range of jobs (his congenital anomaly to the right arm and hand) which precludes unskilled sedentary and light work, as well as work at all exertional levels which require fine motor skills bilaterally. In addition, however, BNSF erroneously regards him as having additional disabilities precluding all right handed work, as well as climbing, neither of which are valid according to the valid results of the functional capacity evaluation and evidenced by 20 years of experience at the medium and heavy exertional ranges which he performed without the ability to use his right hand for fine motor tasks. The complete loss of use of an upper extremity, as perceived by BNSF, would preclude medium, heavy and very heavy work, and coupled with Mr. Schaur's congenital arm deformity, would virtually eliminate Mr. Schauer's employment base in obtaining work within his training and experience, as well as other work. It is obvious that he does not have the total loss of use of his right upper extremity.

From a vocational rehabilitation standpoint, Mr. Schauer remains capable of employment as a machinist as that work is typically performed in the national economy, with an ability to perform only gross motor tasks with his right arm and hand.

All of the above opinions are stated with a reasonable degree of certainty in the field of vocational rehabilitation. Thank you very much for the opportunity of evaluation this case.

Report by Dean Venter