IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID L. SCHAUER, | ) | 4:07CV3282 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on cross-motions for summary judgment. The plaintiff's motion (filing 45) will be denied, while the defendant's motion (filing 47) will be granted in part and denied in part.

The motion filed by the plaintiff, David L. Schauer, pertains only to the first of two counts of the amended complaint, in which he alleges that the defendant, BNSF Railway Company, violated §102 of the Americans with Disabilities Act when it failed to rehire him. Schauer claims that he was not rehired "on the basis of a medical examination not directly related to the requirements of the specific job [he] was capable of performing" and "because of his disability (congenital anomaly of his right arm from birth) which is unrelated to [his] ability to perform the essential functions of the journeyman machinist position for which [he] was already employed." (Filing 22, ¶ 23, p. 4.)

From Schauer's brief, it appears that his motion for summary judgment is confined to the claim that BNSF violated §102 by requiring a medical examination.[1]

---

[1] Section 102 generally prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring . . . of employees," and specifically provides that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an

He argues, however, that there were two such violations: (1) in June 2004, when BNSF required him to complete a medical questionnaire after recalling him to duty; and (2) after December 2005, when BNSF would not rehire Schauer unless he was able to pass a neutral medical evaluation.[2] There are genuine issues of material fact regarding both instances of alleged discrimination.

BNSF's motion apparently involves all of Schauer's ADA claims and also the second count of the amended complaint, in which Schauer alleges that he was not rehired in retaliation for claiming certain employee benefits, in violation of § 510 of the Employee Retirement and Income Security Act of 1974.[3] The motion will be granted only with respect to the ERISA claim.

## *DISCUSSION*

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is not the court's

---

individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(a) & (d)(4)(A).

[2] In making this claim, Schauer relies on BNSF's discovery responses, in which BNSF denied that it "has refused to allow Plaintiff to work in Defendant's Havelock Wheel Plant" for the reason that "Plaintiff failed to follow through with his neutral medical fitness for duty exam which he would have needed to pass before returning to work." (Filing 49-8, p. 3; filing 49-9, p. 4.)

[3] Section 510 states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140.

function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the

3

"depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

### *ADA Claim*

Schauer was born with three fingers and no elbow on his right arm, and his right arm is shorter than his left. His condition has been identified as congenital hypoplasia of the right arm with foreshortening of the forearm and syndactyly of the right hand.

Schauer was employed as a machinist in BNSF's Havelock Wheel Plant in Lincoln, Nebraska, beginning in February 1999. He suffered an on-the-job injury to his left arm in October 2001, but did not report the accident until December 18, 2001. The injury was diagnosed as lateral left epicondylitis. Schauer was off work because of the injury until January 7, 2002, and thereafter was placed on restricted duty. He was suspended for 15 days, starting on January 10, 2002, as a disciplinary action for filing a late injury report.

Schauer also missed work from February 22, 2002, until March 2, 2002, because of an injury to his back, and he obtained a wage continuation payment from BNSF for this time period. Schauer suffered another back injury while at home in May 2002, and again was off work. Schauer was released to return to full duty on June 12, 2002, but was then furloughed from working for BNSF.

On May 26, 2004, Schauer was recalled from furlough to a new position as a machinist in BNSF's Lincoln Diesel Shop. The shop superintendent, Michael Barr, after learning of Schauer's congenital abnormalities and on-the-job injury, requested a medical evaluation of Schauer's ability to perform the work. Schauer was asked to complete a medical questionnaire and his employee medical file was reviewed by BNSF's corporate medical officer, Michael Jarrard, M.D.

On June 11, 2004, Jarrard determined that Schauer was not medically qualified to return to duty as a machinist in the Lincoln Diesel Shop. Barr subsequently requested a determination regarding Schauer's fitness to return to work at the Havelock Wheel Plant. On July 7, 2004, Jarrard restricted Schauer to working at positions that could safely be done with his left arm alone; there allegedly were no such positions available.

Schauer appealed Jarrard's decisions through the machinist union, and, on December 10, 2005, the national mediation board granted Schauer a neutral medical review. On April 17, 2006, Schauer cancelled his scheduled appointment with the neutral medical evaluator and advised BNSF that he did not want his job back.

Schauer contends that he is entitled to summary judgment on the ADA claim because (1) the medical questionnaire was intended to determine if he is disabled and was not job-related or consistent with business necessity, and (2) BNSF required him to pass a medical examination before returning to work. BNSF contends that it is entitled to summary judgment on the ADA claim because (1) Schauer waived his right to reinstatement when he cancelled the neutral medical evaluation, (2) Schauer is not a qualified individual with a disability,[4] (3) Schauer did not administratively exhaust his claim regarding the medical examination, and (4) the questionnaire was job-related and consistent with business necessity.

Upon careful review of the parties' extensive briefs, and considering only admissible evidence, I find there are genuine issues of material fact concerning the

---

[4] Schauer has filed a report by a vocational expert, exhibit 203 (filing 74-4), in opposition to BNSF's motion for summary judgment. BNSF objects to the report as hearsay and lacking in foundation, and has moved that it be stricken (filing 77). Schauer has filed a motion (filing 80) to authenticate the report with a late-filed declaration of his expert, exhibit 260 (filing 82-4). Schauer's motion will be granted. BNSF's motion will be denied.

5

ADA claim that preclude the entry of summary judgment in favor of either party.[5] Regarding Schauer's "medical examination" claim and BNSF's affirmative defenses of waiver and failure to exhaust administrative remedies, however, a few additional comments are in order.

BNSF states that "[t]he medical examination that Schauer claims was prohibited by the ADA is the medical questionnaire BNSF asked Schauer to fill out on June 4, 2004. . . . Schauer was only asked to fill out a medical questionnaire; he was not asked to submit to an examination." (Filing 48, pp. 35-36.) "[T]he only medical inquiry at issue in this case is the medical questionnaire sent to Schauer by Dr. Jarrard in June, 2004." (Filing 57, p. 13.) BNSF argues that "Schauer did not assert in his EEOC in his EEOC charge that BNSF failed to rehire him due to a medical examination, and there is no evidence before the court to suggest that the issue was within the scope of the EEOC's investigation." (Filing 78, p. 10.) "It is BNSF's position that BNSF's utilization of a medical questionnaire in the recall process has not been administratively exhausted and is not appropriately before the court." (Filing 48, p. 33; filing 78, p. 11.)

"Although an EEOC complaint 'need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court,' it must nevertheless 'be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" *Fair v. Norris*, 480 F.3d 865, 867 n. 2 (8th Cir. 2007) (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1123 (8th Cir. 2006)). Thus, "the plaintiff may [only] seek relief for any

---

[5] In an effort to resolve this matter expeditiously, I have elected not to discuss my findings in detail. *See* Civil Justice Delay and Expense Reduction Plan, ¶ 12 (U.S. Dist.Ct., D.Neb., Nov. 1993) ("When motions for summary judgment are considered by a district judge and are denied on the ground that a genuine issue of material fact exists for trial, the court will issue a short opinion so stating, rather than a lengthy opinion canvassing the materials on file in support of or opposition to the motion.").

discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) (quoting *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998)). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.* Even so, the administrative charge is to be "liberally construe[d] . . . for exhaustion of remedies purposes[.]" *Id., at 635* (quoting *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005)).

Schauer filed his charge with the EEOC on January 21, 2005, indicating that the alleged disability discrimination took place between May 26 and November 1, 2004. Among other things, he stated that: "On/about June 6, 2004, I received the company's Medical Questionnaire and completed it. On/about June 11, 2004, I was notified by the Medical Officer that based on 'objective' medical evidence, a determination had been made that I was not medically qualified to return to duty as a Machinist in the Lincoln Diesel Shop." (Filing 51-3, p. 118.) This statement was clearly sufficient to bring Schauer's "medical examination" claim within the scope of the EEOC's investigation, at least insofar as the questionnaire is concerned. Schauer's "medical examination" claim regarding the neutral medical evaluation is a different matter, however, since this claim did not arise until sometime after December 10, 2005 (11 months after the EEOC filing), when the national mediation board granted Schauer this relief.

The Eighth Circuit has "held that a refusal to hire is a discrete employment action, and refusals to hire that occurred subsequent to the timely filed EEOC charge 'are not like or reasonably related to the claims in [the] administrative charge' because the timely filed administrative charge asserted only a single incident of refusal to hire on a specific date." *Wedow v. Kansas City*, 442 F.3d 661, 673 (8th Cir. 2006) (quoting *Parisi*, 400 F.3d at 586)). However, the Eighth Circuit has "not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted." *Id.*

7

Whether Schauer's claim regarding the neutral medical evaluation can fit within this narrow exception will not be decided at this time because BNSF has not argued that Schauer failed to exhaust this particular claim. BNSF's only response to the claim, in fact, is that "[n]o reasonable juror could conclude that BNSF required Schauer to submit to a medical examination—Schauer sought such an examination to challenge a work restriction and then cancelled his appointment." (Filing 78, p. 14.) While I am inclined to agree that the claim lacks merit, the matter has not been adequately addressed at this point.

On the other hand, I find no merit to BNSF's argument that "Schauer waived his right to reinstatement by denying BNSF the ability to determine his fitness for duty when he failed to follow through with obtaining the examination by the agreed upon neutral medical authority on April 20, 2006." (Filing 48, p. 18.) To be clear, BNSF is claiming that "Schauer has waived his right to contend that he is able to perform the essential functions of the position of machinist for BNSF with or without a reasonable accommodation and he is thereby unable to prove that he was a qualified individual with a disability." (Id., at p. 21.)

The two cases cited by BNSF in support of its waiver argument are clearly distinguishable, and do not stand for the proposition of law urged by BNSF. In *Porter v. U.S. Alumoweld Co., Inc.*, 125 F.3d 243, 247 (4th Cir. 1997), the court found that the employer had required a permissible fitness-for-duty exam and also noted that the plaintiff had failed to show that he was disabled "[s]ince [he] did not undergo the requested medical examination *and offered no other evidence*[.]" (Emphasis supplied.) Similarly, in *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1096 (6th Cir. 1998), the plaintiff, who claimed to be HIV positive, "refus[ed] to provide necessary medical information from his own physician . . . [or] to submit to a company-paid examination" that would allow his employer to determine whether the plaintiff posed a direct threat to the health of others, and whether a reasonable accommodation could be made.

In the present case, BNSF claimed that it had sufficient medical information from which to make a determination that Schauer could not safely return to work, and it evidently opposed granting him a neutral medical evaluation. While Schauer must prove that he was disabled (or was regarded as disabled by BNSF), there is enough evidence to require submission of this issue to a jury. Depending on the facts, Schauer's cancellation of the appointment might support a finding that he failed to mitigate his damages, *see, e.g., Smith v. World Ins. Co.*, 38 F.3d 1456, 1463-66 (8th Cir. 1994) (unreasonable rejection of employer's offer of reinstatement will terminate accrual of backpay damages and also bar entitlement to frontpay), but it does not preclude his ADA claim entirely.

### *ERISA Claim*

Schauer alleges that BNSF retaliated against him in violation of ERISA for receiving the wage continuation benefits and applying for supplemental sickness benefits during 2002. BNSF contends that the claim fails as a matter of law because (1) Schauer did not participate in a protected activity under ERISA and (2) there is no evidence that BNSF acted with discriminatory intent.

The evidence conclusively shows that BNSF's wage continuation program, which was used to provide wages for employees who were not able to work due to an on-the-job injury, was self-funded by BNSF. Schauer therefore cannot base his retaliation claim on the wage continuation payment that he received after injuring his back in February 2002. *See* 29 C.F.R. § 2510.3-1(b)(2) ("employee welfare benefit plan" does not include "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties[.]").[6]

---

[6] The term "employee benefit plan" as used in § 510 of ERISA includes "an employee welfare benefit plan or an employee pension benefit plan or a plan which

9

The evidence also shows that on August 7, 2002, a settlement was reached regarding Schauer's October 2001 injury to his left arm. Schauer received a payment of $8,000 from BNSF, but he was required to assign to BNSF an unspecified amount of supplemental sickness benefits that were payable as a result of the injury. BNSF argues that because Schauer did not personally receive these benefits, no ERISA retaliation claim can be maintained. BNSF cites no authority for this proposition, which involves an overly restrictive reading of the statute. In its answer, BNSF specifically "[a]dmits that Plaintiff applied for Supplemental Sickness benefits on August 7, 2002, in connection with a settlement of his on-the-job injury claim with BNSF related to the October 1, 2001, injury." (Filing 23, ¶ 12, p. 3.) Applying for benefits is an exercise of rights that is protected by § 510 of ERISA.

Claims brought pursuant to this section are analyzed under the three-stage burden-shifting paradigm articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Curby v. Solutia, Inc.*, 351 F.3d 868, 871 (8th Cir. 2003). That is, a plaintiff must prove "that he participated in a statutorily protected activity . . . ; that an adverse employment action was taken against him . . . ; and that a causal connection existed between the two." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992). "The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Id.* If a prima facie case is shown under § 510, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If the employer does so, the burden shifts back to the claimant to prove that the proffered reason is pretextual." *Eckelkamp v. Beste*, 315 F.3d 863, 871 (8th Cir. 2002) (quoting *Kinkead v. Southwestern Bell Telephone Co.*, 49 F.3d 454, 456 (8th Cir.1995)).

---

is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).

Schauer argues that because he was furloughed when the settlement was reached, and was not recalled to duty until May 26, 2004, it can be inferred that the adverse employment actions on June 11, 2004, and July 7, 2004, were causally connected to the August 7, 2002 application for supplemental sickness benefits. Assuming that Schauer can establish a prima facie case of retaliation based on temporal proximity (by disregarding the 2-year furlough period), the issue then becomes whether the medical reasons that BNSF gave for not allowing him to work in the Lincoln Diesel Shop and for placing restrictions on his employment in the Havelock Wheel Plant were pretextual.

"If the employer rebuts the inference of discrimination arising from the employee's prima facie case, the employee can prove the employer's articulated justification is merely pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 872 (8th Cir. 2008) (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 853 (3d Cir.1987)). "[T]iming alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse employment action." *Id.*, at 875 (quoting *Green v. Franklin Nat'l Bank*, 459 F.3d 903, 916 (8th Cir. 2006)).

Schauer cannot survive BNSF's motion for summary judgment simply by showing that Jarrard's medical opinions regarding Schauer's working ability might be wrong. In the context of the *McDonnell Douglas* analytical framework, it must be shown that the defendant's proffered explanation for the adverse employment action is "a pretext *for unlawful discrimination*, not that it is merely false in some way." *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1017 (8th Cir. 2005) (emphasis in original). *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993) ("in our view 'pretext' means 'pretext for discrimination'").

11

BNSF has presented evidence that Jarrard was "not aware of whether Schauer applied [for] and received supplemental sickness benefits, received wage continuation payments, or settled a claim with BNSF for an on-the-job injury." (Declaration of Michael Jarrard, M.D. (filing 50-4), ¶ 23, p. 8.) Barr also states that when he requested an evaluation of Schauer's fitness to work in the Lincoln Diesel Shop, he "was not aware whether Schauer had applied for or received Supplemental Sickness Benefits, wage continuation payment, or settled a claim for an on-the-job injury." (Affidavit of Michael Barr (filing 50-3), ¶ 18, p. 6.) The manager of the Havelock Wheel Plant, Harry Widmeyer, who discussed Schauer's situation with Barr and provided information regarding job duties at the wheel plant to Jarrard on June 17, 2004, likewise "did not have any information about Schauer applying [for] or receiving Supplemental Sickness Benefits or Wage Continuation payments." Declaration of Harry Widmeyer (filing 50-2), ¶ 26, p. 9.)

These statements are corroborated by BNSF's claims manager, who states that "Harry Widmeyer was not involved in the negotiations to resolve Schauer's claim related to the October 1, 2001, accident and was not told details about the settlement or about Schauer's assigning to BNSF the Supplemental Sickness Benefits. Similarly neither Mike Barr nor Michael Jarrard, M.D., had any involvement with the resolution of Schauer's October 1, 2001, claim, wage continuation payment, or Schauer's assignment of the August 7, 2002 of [sic] Supplemental Sickness Benefits. Nor did I inform either Mike Barr or Michael Jarrard, M.D., of any details regarding the resolution of Schauer's claim related to his October 1, 2001, claim, wage continuation payment, or the August 7, 2002 assignment of Supplemental Sickness Benefits." (Declaration of Patricia Heather (filing 50-5), ¶¶ 6-7, pp. 2-3 (paragraph numbering omitted).)

There is evidence that Widmeyer stated in his June 17, 2004 communication to Jarrard that it had been a mistake to hire Schauer as a machinist because of his physical problems, and that he should not be allowed to return to work because of BNSF's potential liability if Schauer were to reinjure "his only good arm," but these

12

statements do not indicate that Widmeyer had any knowledge of the August 7, 2002 settlement agreement. The statements may provide evidence of discriminatory intent regarding Schauer's ADA claim, but not his ERISA claim. Schauer also complains that Widmeyer concluded, without making any investigation, that there were no jobs in the wheel plant that could be performed safely with one arm, and that he also failed to determine whether any accommodations could be made for Schauer. Again, this evidence is only relevant to the ADA claim.

Schauer has presented no evidence, apart from the timing of the adverse employment actions, from which it might be inferred that he was retaliated against because he applied for supplemental sickness benefits. Consequently, his ERISA claim will be dismissed.

## *CONCLUSION*

As a matter of law, I find no merit to BNSF's arguments that Schauer waived his right to reinstatement by cancelling the neutral medical evaluation and that he failed to exhaust his administrative remedies regarding the medical questionnaire. There are genuine issues of material fact that preclude the entry of summary judgment for either party on the ADA claims. As to the ERISA claim, however, I find no evidence that BNSF's stated reasons for not rehiring Schauer were pretextual.

Accordingly,

IT IS ORDERED that:

1. Plaintiff's motion to file additional evidence out of time (filing 80) is granted *instanter*, and exhibit 260 (filing 82-4) is accepted.

2. Defendant's motion to strike (filing 77) is denied.

13

3. Plaintiff's motion for summary judgment (filing 45) is denied.

4. Defendant's motion for summary judgment (filing 47) is granted in part and denied in part, as follows:

   a. The motion is granted with respect to count II of Plaintiff's amended complaint (ERISA claim), which claim is dismissed with prejudice.

   b. In all other respects, the motion is denied.

February 4, 2009.                    BY THE COURT:

                                     s/ *Richard G. Kopf*
                                     United States District Judge